# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DAVID NAMDAR,

    Counterclaim Defendant and Counter-Counterclaim Plaintiff,

    v.

IMMUTABLE HOLDINGS INC.,

    Counterclaim Plaintiff and Counter-Counterclaim Defendant.

C.A. No. 2024-0535-CDW

## REPORT DENYING MOTION TO DISMISS AMENDED COUNTER-COUNTERCLAIM

Date Submitted:  February 3, 2026
Date Decided:  July 17, 2026

Thomas A. Uebler, Brian V. DeMott, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; Andrew G. Prout, Brent S. Colasurdo, ROSS, WOLCOTT, TEINERT & PROUT LLP, Costa Mesa, CA; *Counsel for Counterclaim Defendant and Counter-Counterclaim Plaintiff David Namdar*

David E. Ross, Roger S. Stronach, Dylan T. Mockensturm, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Travis G. Edwards, Jonathan I. Liebman, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC, Washington, DC; *Counsel for Counterclaim Plaintiff and Counter-Counterclaim Defendant Immutable Holdings Inc.*

**WRIGHT, M.**

Pending before the court is counterclaim plaintiff Immutable Holdings Inc.'s Motion to Dismiss Amended Verified "Counter-Counterclaim" ("Motion").[1] I recommend the court deny the Motion.

## I. BACKGROUND[2]

Counterclaim defendant David Namdar is an individual residing in San Juan, Puerto Rico.[3] Namdar previously invested in Immutable and served as Immutable's president.[4] Immutable is a Delaware corporation with its principal place of business in San Juan, Puerto Rico.[5] Immutable is a blockchain holding company that owns equity in a variety companies in the digital asset ecosystem.[6]

---

[1] Dkt. 56.

[2] For additional background, I refer readers to Vice Chancellor Laster's decisions dismissing Namdar's claims with prejudice and denying Namdar's motion to dismiss Immutable's counterclaims. *See generally* Dkts. 32–33.

[3] Ans. to Verified Countercl. and Am. Verified Counter-Countercl., Dkt. 52 ¶ 1 ("Amended Counter-Counterclaim" and cited as "Am. Counter-Countercl."); Verified Am. Compl., Dkt. 13 ¶ 2 ("Amended Complaint" and cited as "Am. Compl.").

[4] Am. Counter-Countercl. ¶¶ 5–7; Am. Compl. ¶ 19.

[5] Am. Counter-Countercl. ¶ 2; Am. Compl. ¶ 3.

[6] *See* Am. Compl. ¶¶ 15–17.

## A.    Factual Background

Namdar invested $100,000 in Immutable on January 26, 2021.[7] Namdar alleges that, in exchange for serving as Immutable's President, the parties entered into an oral compensation arrangement under which Namdar would receive a 6.5% equity interest in Immutable.[8]

In February, Namdar and Fried worked to purchase the NFT.com website domain ("Domain") for Immutable with plans to build a business around the site.[9] Namdar contributed $1 million to that acquisition, $200,000 of which were his personal funds and the rest he fundraised through his personal network.[10] As part of this acquisition Namdar also connected Fried and Immutable with GMP Stifel, an investment bank with experience in the cryptocurrency and blockchain industries to assist with building the Domain business.[11] Namdar alleged that the parties negotiated the structure of the business associated with the Domain and that, in May, the Domain was assigned to NFT.com LLC.[12]

---

[7] Am. Counter-Countercl. ¶ 6; Am. Compl. ¶ 18.

[8] Am. Compl. ¶ 19; *see* Am. Counter-Countercl. ¶ 7 (alleging Namdar was offered additional equity as compensation but not specifying the amount).

[9] Am. Counter-Countercl. ¶ 8.

[10] *Id.* ¶ 9; Am. Compl. ¶ 22.

[11] Am. Counter-Countercl. ¶ 10.

[12] Am. Compl. ¶¶ 26, 28.

Namdar also claimed he contributed substantial time and effort to Immutable and the Domain-related business.[13] He alleged that, as Immutable moved closer to going public, Immutable and Fried took steps to ensure he would not be compensated for his work.[14] For example, Namdar asserted he was excluded from a trip taken by Fried and Immutable's board on or about July 20 concerning a business collaboration regarding the Domain.[15] He also alleged he was omitted from Immutable's share register when it was circulated on or about July 31.[16]

On August 2, Namdar met with Fried and Jeffrey Long, Immutable's Head of Legal, at Immutable's headquarters to discuss his missing shares.[17] During that meeting, Namdar and Immutable executed an employment agreement.[18] The relevant sections of the Employment Agreement state:

> 1. <u>Employment</u>. (a) Commencing on the Effective Date, Immutable Holdings shall employ Executive for a period of twelve (12) months (the "<u>Term</u>"), as its President, in which capacity Executive will also serve as Chief Executive Officer ("<u>CEO</u>") of Immutable Holdings' affiliate NFT.com LLC, provided that Executive will

---

[13] *Id.* ¶ 30.

[14] *Id.* ¶ 35.

[15] *Id.* ¶ 38.

[16] *Id.* ¶ 39.

[17] Am. Counter-Countercl. ¶ 11; Am. Compl. ¶ 40.

[18] Dkt. 10, Ex. 2 ("Employment Agreement" and cited as "Empl. Agreement").

transition out of the role of CEO of NFT.com LLC over time such that Executive's role with respect to NFT.com LLC will be as an advisor by the end of calendar year 2021.

2. Compensation. While Executive is employed by Immutable Holdings, Executive shall be paid a salary of Fifteen Thousand Dollars ($15,000) per month ("Base Salary"), payable in accordance with the regular payroll schedule in effect at the Company.

3. Equity Compensation. Executive will receive a grant of stock in the number of units that shall constitute .5% of all outstanding shares of its common stock, in accordance with Immutable Holdings' applicable Stock Plan following successful completion of the Company's pending reverse take-over "RTO" (the "RTO Grant"). Executive will be eligible for an additional grant of stock in Immutable Holdings in the number of units that shall constitutes .5% of all outstanding shares of its common stock, in accordance with Immutable Holdings' applicable Stock Plan, following the first anniversary of the execution of this Agreement so long as Executive has completed his duties and obligations hereunder in good faith and remains in good standing with the Company (the "Anniversary Grant" and, collectively with the RTO grant, the "Equity Grants"). Executive will receive separate documentation regarding the forgoing grants under the Company's applicable Stock Plan.[19]

Namdar alleged the parties agreed Namdar would receive a 6.5% stake in Immutable for serving as president.[20] Namdar also alleged defendants then

---

[19] *Id.* §§ 1–3 (cleaned up).

[20] Am. Compl. ¶ 86.

fraudulently induced him into executing the Employment Agreement and accepting the 1% stake plus a $15,000 monthly salary for 12 months by falsely representing the step-down in equity would not affect him financially.[21] Currently, Namdar alleges Immutable breached the Employment Agreement by failing to pay his $15,000 monthly salary as required by Section 2 and failing to grant him the 1% equity he is entitled to under Section 3.[22]

## B.    Procedural Posture

On May 20, 2024, Namdar filed his complaint, asserting claims for breach of contract, promissory estoppel, unjust enrichment, and fraud.[23] Namdar first sought to have the court declare the Employment Agreement void and unenforceable because defendants fraudulently induced him to accept it.[24]

On July 26, defendants filed the Motion and their opening brief in support of it.[25] Immutable also asserted two counterclaims against Namdar, arguing the Employment Agreement is valid and Namdar breached the

---

[21] *See id.* ¶¶ 87–90.

[22] Am. Counter-Countercl. ¶¶ 17–20.

[23] Verified Compl., Dkt. 1, Counts I–VI.

[24] *Id.* ¶¶ 34–45, 87–91.

[25] *See* Dkt. 9.

Employment Agreement's forum-selection clause and general release of liability clause.[26]

On September 5, Namdar filed an amended complaint.[27] On September 13, Namdar moved to dismiss Immutable's counterclaims and filed his opening brief.[28] On September 19, defendants moved to dismiss the Amended Complaint and filed their opening brief.[29]

On October 21, Immutable filed its answering brief opposing Namdar's motion to dismiss the counterclaims.[30] That same day, Namdar filed his answering brief opposing defendants' motion to dismiss the Amended Complaint.[31] On November 4, Namdar filed his reply brief in further support of his motion to dismiss the counterclaims,[32] and defendants filed their reply brief in further support of their motion to dismiss the Amended Complaint.[33]

---

[26] Def. and Countercl. Pl.'s Verified Countercls., Dkt. 10 ¶¶ 57, 70–76; Empl. Agreement § 14.

[27] *See* Am. Compl.

[28] Dkts. 14–15.

[29] Dkt. 18.

[30] Dkt. 19.

[31] Dkt. 20.

[32] Dkt. 21.

[33] Dkt. 22.

On March 20, 2025, the court heard oral argument and dismissed the Amended Complaint with prejudice.[34] The court held the Employment Agreement is a valid settlement agreement supported by consideration.[35]

On June 6, the court issued an opinion denying Namdar's motion to dismiss Immutable's counterclaims based on an alleged breach of the forum-selection clause.[36] On July 14, Namdar answered Immutable's counterclaims and asserted a "counter-counterclaim" for breach of contract, alleging that Immutable breached material provisions of the Employment Agreement by failing to pay salary and failing to deliver the agreed equity compensation.[37]

On August 4, Immutable moved for a more definite statement regarding the Original Counter-Counterclaim,[38] which the court granted on September 8.[39] On September 22, Namdar filed the Amended Counter-Counterclaim.[40]

On October 30, Immutable moved to dismiss the Amended Counter-Counterclaim and filed its opening brief.[41] Namdar filed his answering brief

---

[34] Dkts. 29, 31.

[35] Dkt. 32 at 73.

[36] Dkts. 33–34.

[37] Dkt. 37 ("Original Counter-Counterclaim").

[38] Dkt. 38.

[39] Dkt. 51.

[40] Dkt. 52.

[41] Dkt. 56.

in opposition on December 5, and Immutable filed its reply brief on December 19.[42] On February 4, 2026, the Court heard oral argument on the Motion and took the matter under advisement.[43]

## II. ANALYSIS

Immutable moves to dismiss the Amended Counter-Counterclaim with prejudice under Court of Chancery Rule 12(b)(6).[44] When considering a motion to dismiss under Rule 12(b)(6), the court (1) accepts all well pleaded factual allegations as true, (2) credits vague allegations if they give the opposing party notice of the claim, and (3) draws all reasonable inferences in favor of the non-moving party. *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). A motion to dismiss will be denied "unless the [claimant] would not be entitled to recover under any reasonably conceivable set of circumstances." *Cent. Mortg. Co*, 27 A.3d at 535.

Immutable contends the Amended Counter-Counterclaim should be dismissed for three reasons. First, Immutable argues the Amended Counter-

---

[42] Dkts. 61, 63.

[43] Dkt. 66.

[44] Dkt. 56.

Counterclaim is not a proper pleading under Court of Chancery Rule 7.[45] Second, Immutable argues the Amended Counter-Counterclaim is barred by *res judicata*.[46] Third, Immutable argues the Amended Counter-Counterclaim is barred by laches.[47]

Namdar argues the Amended Counter-Counterclaim is permissible under Court of Chancery Rule 13.[48] He also argues *res judicata* is inapplicable because there is no prior action and the Amended Counter-Counterclaim is a new claim that is "part of the same suit."[49] Finally, Namdar argues the Amended Counter-Counterclaim is timely because it was filed within the three-year limitations period when tolling and relation-back principles are applied, so it is presumptively not barred by laches.[50] Alternatively, Namdar argues Immutable will suffer no prejudice because the case remains at the pleading stage, discovery has not begun, and the contract

---

[45] Countercl. Pl. Immutable Hldgs. Inc.'s Opening Br. in Support of Its Mot. to Dismiss Am. Verified "Counter-Countercl." at 11–15 ("Opening Br."), Dkt. 56.

[46] *Id.* 15–20.

[47] *Id.* 20–27.

[48] Pl./Countercl. Def. David Namdar's Opp'n to Def.'s Mot. to Dismiss Am. Verified "Counter-Countercl." 3–6 ("Answering Br."), Dkt. 61.

[49] *Id.* 7–8.

[50] *Id.* 9–14.

at issue is already being litigated in this action, so Immutable's laches argument still fails.[51]

As I explain below, I find the Court of Chancery Rules permit counter-counterclaims, also referred to as "counterclaims in reply" or "reply counterclaims." Counterclaims in reply are not entirely unknown in our court,[52] the plain language of the Court of Chancery Rules permits them, and the weight of authority interpreting the Federal Rules of Civil Procedure, on which the Court of Chancery Rules are based, accepts counterclaims in reply in at least some circumstances. I also find Namdar's counterclaim in reply is not barred by *res judicata* because that doctrine requires the existence of a prior action litigated to finality, which is lacking here. And, finally, I find the Amended Counter-Counterclaim is not time-barred because it relates back to the timely-filed Original Counter-Counterclaim.

---

[51] *Id.*

[52] *See, e.g.*, *VGS, Inc. v. Castiel*, 2004 WL 876032, at *1 (Del. Ch. Apr. 22, 2004) (noting the participation of certain parties as "reply counterclaim plaintiffs" and a "reply counterclaim defendant"); *Arvida/JMB P'rs, L.P. v. Vanderbilt Income & Growth Assocs., L.L.C.*, 1997 WL 33173286, at *1 (Del. Ch. Sept. 11, 1997) (ORDER) (noting the assertion of "reply counterclaims" and entering judgment for "Reply Counterclaim Defendants").

## A. The Court of Chancery Rules Permit Counterclaims in Reply to a Counterclaim

Immutable contends the court should grant the Motion because Court of Chancery Rule 7 does not list a "counter-counterclaim" as an acceptable pleading, and no Delaware court decision has expressly condoned a "counter-counterclaim."[53] As Immutable notes, Rule 7(a)(1) recognizes only seven types of pleadings: "(A) a complaint; (B) an answer to a complaint; (C) an answer to a counterclaim designated as a counterclaim; (D) an answer to a crossclaim; (E) a third-party complaint; (F) an answer to a third-party complaint; and (G) if the Court orders one, a reply to an answer."[54] Relying on five federal decisions, Immutable argues the Amended Counter-Counterclaim is procedurally improper under Rule 7.[55]

---

[53] Opening Br. 11; Reply Br. 3–4.

[54] Opening Br. 11 (quoting Ct. Ch. R. 7(a)(1)).

[55] *Id.* 12–15 (citing and quoting *Brotman v. State Gov't Leadership Found.*, 2019 WL 234570, at *6 (E.D. Tenn. Jan. 16, 2019) (finding the plaintiff's attempt to bring counterclaims "impermissible" after his complaint had been dismissed)); *Healthe, Inc. v. High Energy Ozone LLC*, 2021 WL 2939924, at *2 (M.D. Fla. June 17, 2021) (agreeing counterclaims in reply are impermissible under the FRCP and likely result in confusion down the road); *Gonzalez v. Cent. Elec. Coop., Inc.*, 2009 WL 3415235, at *5 (D. Or. Oct. 15, 2009) ("Rule 7(a) . . . does not permit . . . 'counterclaims' in replies."); *Brooks v. Bates*, 781 F. Supp. 202, 207 (S.D.N.Y. 1991) ("[T]he Federal Rules of Civil Procedure do not contemplate a counterclaim to a counterclaim. However, Rule 15(a) permits a party to amend its pleadings by leave of court[.]"); *Williams v. Walker Morgan, LLC*, 2017 WL 655580, at *1 (D.S.C. Feb. 17, 2017) (observing that "[t]he Federal Rules of Civil Procedure do not recognize counterclaims to counterclaims.")).

Namdar asserts his pleading is authorized if Rule 7 is read together with Rule 13.[56] He characterizes his filing as an "answer to a counterclaim designated as a counterclaim" under Rule 7(a)(1)(C) and argues Rule 13 permits a counterclaim to be asserted in a reply to a counterclaim.[57] Namdar cites two decisions within the Third Circuit recognizing counterclaims asserted in a reply to a counterclaim.[58]

### 1. The "Tangled" Propriety of Counterclaims in Reply Under the Federal Rules of Civil Procedure

The parties' reliance on federal authorities in the absence of guiding authority from a Delaware court is appropriate. The Court of Chancery Rules are patterned after the Federal Rules of Civil Procedure ("FRCP"), so federal authority is instructive on the proper interpretation of this court's corresponding rules. *See Moran v. Unation, Inc.*, 2025 WL 3706330, at *9 (Del. Ch. Dec. 22, 2025) (citing *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2018 WL 6331622, at *9 n.53 (Del. Ch.

---

[56] *Id.* 11; *see* Reply Br. 3–4.

[57] Answering Br. 3–4 (citing *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, 2007 WL 1218701, at *6 (E.D. Mich. Apr. 20, 2007) ("by the plain language of the rules, a counterclaim may be raised in a pleading, and a reply to a counterclaim is a permissible pleading; hence, a counterclaim may be asserted in a reply to a counterclaim.")).

[58] *Id.* 4–5 (citing *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 418 (D. Del. 1970); *Janssen Pharm., N.V. v. Mylan Pharms. Inc.*, 2016 WL 11785098, at *16 (D. Del. Oct. 18, 2016)).

Dec. 4, 2018). As one federal court has noted, "[t]he procedural propriety of 'counterclaims in reply' is tangled, to put it mildly." *Healthe, Inc. v. High Energy Ozone LLC*, 2021 WL 2939924, at *1 (M.D. Fla. June 17, 2021).[59] Federal courts have taken a variety of approaches to resolving the question.

First, some federal courts permit no counterclaims in reply because the text of FRCP 7(a) does not list a "counter-counterclaim" as a permitted pleading. *See KLC Fin., LLC v. SARC USA, Inc.*, 2026 WL 1959070, at *2 (E.D. Mo. July 7, 2026) (citing *Gonzalez v. Cent. Elec. Coop., Inc.*, 2009 WL 3415235, at *5 (D. Or. Oct. 15, 2009), and *Healthe*, 2021 WL 2939924, at *2); *Healthe*, 2021 WL 2939924, at *1 (citing *Gonzalez*, 2009 WL 3415235, at *5); *Pearl Res.*, 643 B.R. at 449–50 (citing *Gonzalez*, 2009 WL 3415235, at *5). Second, other federal courts permit all counterclaims in reply because FRCP Rule 13(a) permits "a pleading" to state "any claim" as a counterclaim and under FRCP 7(a) an answer (or reply) to a counterclaim is "a pleading." *See KLC Fin.*, 2026 WL 1959070, at *2 (citing *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, 2007 WL 1218701, at *2–3 (E.D. Mich. Apr. 20,

---

[59] *See also, e.g.*, *KLC Fin., LLC v. SARC USA, Inc.*, 2026 WL 1959070, at *2 (E.D. Mo. July 7, 2026) ("Courts are divided over whether a plaintiff can advance a counterclaim in reply to a defendant's counterclaim.") (citations omitted); *In re Pearl Res. LLC*, 643 B.R. 436, 448 (Bankr. S.D. Tex. 2022) ("Whether a plaintiff may assert a counterclaim in reply to defendant's counterclaim has been a divisive issue among courts.") (citations omitted).

2007), and *SEMS, Inc. v. Lee*, 2023 WL 6165684 (M.D. La. Sept. 21, 2023)); *Healthe*, 2021 WL 2939924, at *2 (citing *Power Tools*, 2007 WL 1218701, at *2–3); *Pearl Res.*, 643 B.R. at 450 (discussing *Power Tools*).

Third, other courts permit counterclaims in reply if they are compulsory claims in response to the counterclaim. *See KLC Fin.*, 2026 WL 1959070, at *3 (citing *Electroglas, Inc. v. Dynatex Corp.*, 473 F. Supp. 1167, 1171 (N.D. Cal. 1979)); *Healthe*, 2021 WL 2939924, at *1 (citing *Electroglas*, 473 F. Supp. at 1171); *Pearl Res.*, 643 B.R. at 450–52 (discussing *Electroglas*, 473 F. Supp. at 1171; *Vieste, LLC v. Hill Redwood Dev.*, 2012 WL 464191, at *2 (N.D. Cal. Feb. 13, 2012); and other authorities). Fourth, some courts allow compulsory counterclaims in reply to permissive counterclaims. *See KLC Fin.*, 2026 WL 1959070, at *3 (citing *Lincoln Sav. Bank v. Open Solutions, Inc.*, 956 F. Supp. 2d 1032, 1040 (N.D. Iowa 2013), and *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1095–96 (D. Minn. 2007)); *Healthe*, 2021 WL 2939924, at *1 (citing *Lincon Sav. Bank*, 956 F. Supp. 2d at 1040); *Pearl Res.*, 643 B.R. at 452–57 (discussing *Lincoln Sav. Bank*, 956 F. Supp. 2d at 1040; *Feed Mgmt. Sys.*, 518 F. Supp. 2d at 1096–97; and other authorities). Fifth, "some [courts] throw up their hands at the whole quagmire and conclude counterclaims in reply should be treated as motions to amend the complaint." *Healthe*, 2021 WL 2939924, at *1 (citing *Century Pac., Inc. v. Hilton Hotels*

*Corp.*, 528 F. Supp. 2d 206, 213 n.3 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009)). *See also KLC Fin.*, 2026 WL 1959070, at \*3 (citing authorities); *Pearl Res.*, 643 B.R. at 457–58 (discussing authorities).[60]

To those five approaches, the *Pearl Resources* court added a sixth. As the court explained, it viewed the critical inquiry being to ask what the counterclaim in reply is trying to do: "(1) seek[] to amend plaintiff's original complaint; or (2) seek[] to remain part of another pleading on the docket." 643 B.R. at 458. If the counterclaim in reply is trying to do the former, where the plaintiff is seeking to add new claims to the original complaint, then "the 'counterclaims in reply' would not actually be counterclaims but simply an amendment. Thus, Rule 15 would govern." *Id.* at 450. If the counterclaim in reply instead is filed instead as part of another pleading, such as an answer to a counterclaim, then "Rule 15 would not apply" and the plaintiff may proceed with the counterclaim in reply. *Id.* at 458–59.

The Wright & Miller treatise, surveying the landscape, acknowledges the FRCP's plain language supports the second approach: "[Because] there

---

[60] This is the approach taken by several courts within the Third Circuit. *See Pennington v. Wells Fargo Bank*, 947 F. Supp. 2d 529, 533–34 (E.D. Pa. 2013) (citing *Se. Indus. Tire Co. v. Duraprene Co.*, 70 F.R.D. 585, 587–88 (E.D. Pa. 1976) ("*Duraprene*")); *Janssen Pharma., N.V. v. Mylan Pharma. Inc.*, 2016 WL 11785098, at \*12 (D. Del. Oct. 18, 2016) (citing *Pennington*, 947 F. Supp. 2d at 533–34; *Aleynikov v. Goldman Sachs Gp.*, 2016 WL 6440122, at \*6 n.6 (D.N.J. Oct. 28, 2016) (citing *Pennington*, 947 F. Supp. 2d at 533).

does not appear to be any warrant for . . . limiting constructions in the language of the rules, . . . an answer to a counterclaim . . . should be fully capable of housing counterclaims of any kind." 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1188 (4th ed. Sept. 2025 update). But it also suggests plaintiffs consider a different approach: "Nevertheless, a more orderly procedure for achieving the same result might be for the plaintiff to seek to amend the original complaint to include the new claim." *Id.*

### 2. The Plain Language of the Court of Chancery Rules Permits Counterclaims in Reply

Considering the foregoing federal authorities, I find the correct approach for the Court of Chancery Rules is to apply the plain language, which permits a plaintiff to assert a counterclaim as part of their answer to a defendant's counterclaim. To borrow the recent words of one federal court:

> [Court of Chancery] Rules 7 and 13 permit counterclaims in reply. [Court of Chancery] Rule 13 permits counterclaims to be asserted in a *pleading*, and [Court of Chancery] Rule 7(a)(3) defines *pleading* to include an *answer to a counterclaim*.

*KLC Fin.*, 2026 WL 1959070, at *3 (emphasis in original).

For the reasons explained by the *Pearl Resources* court, I decline to embrace the approach that treats all counterclaims in reply as amendments to the complaint. *See Pearl Res.*, 643 B.R. at 457–58. The authors of the Wright

- 16 -

& Miller treatise are correct that a plaintiff amending its complaint rather than filing a counterclaim in reply will often be "a more orderly procedure."  *See* 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1188 (4th ed. Sept. 2025 update).  But I agree with the *Pearl Resources* court that the rules do not require it, and forcing a counterclaim in reply to be treated as if it were an amendment to the complaint is inconsistent with the Rules 7, 13, and 15. *See Pearl Res.*, 643 B.R. at 457–58.

Immutable's arguments against a plain language approach are not persuasive.  First, as to Immutable's argument that Rule 7 does not explicitly identify a counter-counterclaim as a permitted pleading,[61] Rule 7 does not identify a counterclaim as one either—counterclaims are claims, not pleadings.[62]  Second, as to Immutable's argument that reading Rule 13 to

---

[61] Reply Br. 3–4.

[62] *See, e.g.*, *Pearl Res.*, 643 B.R. 436, 449 (Bankr. S.D. Tex. 2022) ("As the language of the rule shows, a counterclaim is not itself a pleading, but is a claim included in some other pleading."); *Vivot Equip. Corp. v. Underwater Mechanix Servs., LLC*, 2024 WL 231450, at *2 (D.V.I. Jan. 22, 2024) ("Because a counterclaim is not itself a pleading, to state a counterclaim consistently with Rule 7(a) and Rule 13, a party must file the counterclaim as part of a recognized pleading, *i.e.*, an answer.") (quoting *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 839063, at *1–2 (E.D. Pa. Mar. 26, 2009), and discussing other authorities); 5 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1183 (4th ed. Apr. 2026 update) ("In the same vein, affidavits, notices of removal, crossclaims, and counterclaims are not considered pleadings.").  These authorities illustrate why I am unsure the *Pearl Resources* court's sixth approach is necessary. I agree a counterclaim in reply which "seeks to amend [the] original complaint" instead of "seek[ing] to remain part of another pleading," 643 B.R. at 458, should be analyzed as a motion for leave to amend under Rule 15, but that suggests the

permit counterclaims in any pleading other than an answer "would render the Rules nonsensical,"[63] the weight of federal authority allowing counterclaims in reply to counterclaims discussed above is an adequate rejoinder.[64]

Third, as to Immutable's argument that a plain language approach "lacks any limiting principle" and will create a "procedural nightmare"[65] of counterclaims in reply to counter-counterclaims (and so on), Immutable does not identify a case where this happened. The FRCP went into effect on September 16, 1938,[66] the substance of Rules 7 and 13 has not materially changed in the past 88 years,[67] and federal courts have allowed counterclaims

---

filing of a counterclaim as a standalone pleading, something Rules 7 and 13 do not seem to contemplate.

[63] Reply Br. 4.

[64] *See also Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 418 (D. Del. 1970) ("Rule 13 is not limited by its terms to counterclaims only in the answer, and speaks simply of claims which 'the pleader' has against the opposing party."); *Warren v. Indian Ref. Co.*, 30 F. Supp. 281, 282 (N.D. Ind. 1939) ("The question arises, who may counterclaim? Defendant says, only the defendant. Plaintiff says, either plaintiff or defendant. That is, it is plaintiff's contention that a plaintiff may file a counterclaim to a counterclaim. This seems to be exactly what Rule 13(b) permits. It is worthy of note and would seem to be quite significant that Rule 13 does not use the term 'plaintiff' or 'defendant', or 'complaint' or 'answer', but speaks of 'pleading', 'a pleader' and 'any opposing party.'").

[65] Opening Br. 12–13 (citing authorities); Reply Br. 4 (citing authorities).

[66] *See* FRCP Hist. Note at VII.

[67] *Compare* FRCP 7(a) (1938), *with* FRCP 7(a); *compare* FRCP 13(a)–(b) (1938), *with* FRCP 13(a)–(b). A copy of the FRCP as adopted in 1938 is available online from the Library of Congress. *See* U.S. Cong., H. Doc. No. 75-460, https://hdl.loc. gov/loc.law/llserialsetce.10250_00_00-002-0460-0000 (last visited July 17, 2026).

in reply since the early days.[68]  Finally, as to Immutable's argument that this approach allows Namdar to introduce claims that he could have asserted as part of his original complaint and would undermine the finality of the court's prior dismissal order,[69] the plain language of the Court of Chancery Rules 7 and 13 do not require it.[70]  There are legal doctrines and principles—such as *res judicata*, the law of the case, the prohibition on claim-splitting, and Rule 15(a)(5)—that seek to promote judicial efficiency, finality, and respect for prior rulings.  One (or more) of those doctrines and principles could be applied when a plaintiff's assertion of a counterclaim in reply is inconsistent with them.  Immutable invoked one in its opening brief, and I address that in the next section.

---

[68] *See* Elizabeth Gaspar Brown, *Federal Procedure—Counterclaim to a Counterclaim Under the Federal Rules*, 52 MICH. L. REV. 1179, 1179–80 (1954) ("With one exception the cases decided in the federal courts under the Federal Rules of Civil Procedure have held that the plaintiff is free to plead a counterclaim in the reply, although in every instance the counterclaim in the reply under consideration was one related to the subject matter of the counterclaim pleaded in the defendant's answer.") (citing authorities).

[69] Opening Br. 13–14; Reply Br. 6–7.

[70] *Cf. Duraprene*, 70 F.R.D. at 588 (stating, in *dicta*, "the Federal Rules clearly authorize a counterclaim in reply even in those limited circumstances where the plaintiff would not have been able to augment his claim if it were not for the fact that the defendant had filed a compulsory counterclaim").

**B.** ***Res Judicata* Does Not Mandate Dismissal of the Amended Counter-Counterclaim**

In its opening brief, Immutable argues that even if the Amended Counter-Counterclaim is permitted under Court of Chancery Rule 7, it separately fails because it is barred by *res judicata*.[71]

As the Supreme Court has explained, "[t]he doctrine of *res judicata* is venerable and well-established in our legal history, having been traced back to Roman law and implemented in English law in the twelfth century." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009) (citation omitted). It exists "to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy," and "extends to all issues which might have been raised and decided in the first suit as well as to all issues that actually were decided." *Id.* at 191–92 (citations omitted). "In essence, the doctrine of *res judicata* serves to prevent a multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction." *Id.* (quoting *Taylor v. Desmond*, 1990 WL 18366, at *2 (Del. Super. Jan. 25 1990), *aff'd*, 1990 WL 168243 (Del. Aug. 31, 1990)).

---

[71] Opening Br. 15–20.

Delaware applies a five-part test to determine when *res judicata* bars a claim:

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.

*Id.* (quoting *Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1092 (Del. 2006)). Immutable argues all five elements are met here.[72] Namdar disagrees, arguing that *res judicata* does not apply because the doctrine requires a prior action and there is no prior action here.[73]

I agree with Namdar that *res judicata* does not preclude the Amended Counter-Counterclaim because the doctrine requires the existence of a prior action. "[R]es judicata only 'applies to successive litigations, not within the same case.'" *Goode v. Goode*, 350 A.3d 1226, 2025 WL 3204047, at *5 (Del. Nov. 17, 2025) (ORDER) (quoting *Elutions Cap. Ventures S.A.R.L. v. Betts*, 2022 WL 17075692, at *6 (Del. Ch. Nov. 18, 2022) (ORDER)).[74]

---

[72] Opening Br. 15–20.

[73] Answering Br. 7–8.

[74] *See also French v. French*, 622 A.2d 1095, 1992 WL 453269, at *3 (Del. Dec. 7, 1992) (ORDER) (explaining *res judicata* does not apply when the relevant motions

Immutable, perhaps recognizing this problem, dismisses Namdar's argument as a "technicality" and shifts the argument to different grounds, insisting "[w]hether by operation of Rule 15, the law-of-the-case doctrine, or *res judicata*, the law is clear: A plaintiff who has litigated to finality one cause of action cannot later bring new claims arising from the same transaction."[75] As salutary as that principle might be, Immutable did not argue all of those grounds in its opening brief, it raised only *res judicata*.[76] For purposes of the Motion, then, Immutable waived reliance on Rule 15(a)(5), the law of the case doctrine, and the prohibition on claim splitting. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Emerald Partners has waived any argument it had against Hall Financial by not raising the issues in their opening brief."); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993) ("The

---

"were part of the same suit"); *Res Judicata*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("[A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to *a subsequent action* involving the same claim, demand or cause of action.") (emphasis added); *Res Judicata*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An affirmative defense barring the same parties from litigating *a second lawsuit* on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised *in the first suit*.") (emphasis added).

[75] Reply Br. 9–10.

[76] *See* Opening Br. 15–20.

failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim[.]").

## C. The Amended Counter-Counterclaim is Not Barred by Laches

Immutable's final argument is that the Amended Counter-Counterclaim is time barred under the equitable doctrine of laches.[77] The Amended Counter-Counterclaim is a legal claim (breach of contract) for which Namdar seeks legal relief (money damages).[78] Under this court's precedent, when a party "has advanced a legal claim and seeks a form of relief that is available from a court at law, such as monetary damages, then the court will apply the statute of limitations in the same manner as a law court." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1194 (Del. Ch. 2022).[79] But "extraordinary circumstances may provide an exception to the strict application of statutes of limitations for purely legal matters, separate and apart from the application of tolling doctrines." *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016). Breach of contract claims are subject to a three-year statute of limitations period, *see* 10 *Del. C.* § 8106(a), so the

---

[77] *Id.* 20–27; Reply Br. 13–18.

[78] *See* Am. Counter-Countercl., Prayer for Relief ¶ C ("Awarding Namdar damages in an amount to be determined at trial[.]").

[79] *See also, e.g.*, *Vivint Solar, Inc. v. Lundberg*, 2024 WL 2755380, at *20 (Del. Ch. May 30, 2024), *aff'd*, 340 A.3d 541 (Del. Mar. 19, 2025) (ORDER).

question Immutable's argument presents is whether the Amended Counter-Counterclaim was filed within three years of the claim accruing, absent extraordinary circumstances.

Immutable argues "it is plain from the face" of the Amended Counter-Counterclaim that any claim Namdar has for breach of the Employment Agreement accrued no later than August 2, 2022, the date of the last "Anniversary Grant" under the Employment Agreement.[80] It argues Namdar did not file his Amended Counter-Counterclaim until September 22, 2025, outside the three-year window for breach of contract claims.[81] Immutable also argues that Namdar cannot benefit from the July 14, 2025 filing date of the Original Counter-Counterclaim under Court of Chancery Rule 15(c) because Vice Chancellor Laster's order granting Immutable's motion for a more definite statement was a judicial finding and law of the case that the Original Counterclaim did not put Immutable on notice of the claim against it.[82]

In response, Namdar does not take issue with the August 2, 2022 start date for the running of the three-year clock, but argues that the Amended

[80] Opening Br. 21.

[81] *Id.*

[82] *Id.* 23–25.

- 24 -

Counter-Counterclaim is timely for two reasons. First, he argues the Original Counter-Counterclaim was timely filed on July 14, 2025, and the Amended Counter-Counterclaim relates back to the Original Counter-Counterclaim under Court of Chancery Rule 15(c) because Immutable had all the notice it needed.[83] Second, he argues the limitations period for the Amended Counter-Counterclaim was tolled by the filing of Immutable's breach of contract counterclaim on July 26, 2024.[84]

### 1. The Amended Counter-Counterclaim Relates Back to the Original Counterclaim Under Rule 15(c)(2)

Under Court of Chancery of Rule 15(c)(2), an amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Ct. Ch. R. 15(c)(2). "The 'determinative factor' for a Delaware court applying Rule 15(c) is 'whether a defendant should have had notice from the original pleadings that the plaintiff's new claim might be asserted against him.'" *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (quoting *Atlantis Plastics Corp. v. Sammons*, 558 A.2d

---

[83] Answering Br. 9–11.

[84] *Id.* 12.

1062, 1065 (Del. Ch. 1989)). "The cause of action concept embodied in Rule 15(c) has been broadly defined to require simply that there be fair notice of the general fact situation out of which the claim or defense arose . . . . [T]he mere fact that the amendment changes the legal theory on which the action was originally brought is of no consequence if the factual situation upon which the action depends remains the same." *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 264 (Del. 1993) (citations omitted). At bottom, "[t]he purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed." *Chaplake Hldgs., Ltd. v. Chrysler Corp.*, 766 A.2d 1, 6 (Del. 2001) (quoting 3 MOORE'S FEDERAL PRACTICE § 15.02[1] (3d ed. 1999)). "Whether a proposed amendment satisfies the requirements for Rule 15(c) is at the trial court's discretion." *Mullen*, 625 A.2d at 264 (citation omitted).

Immutable's vigorous argument notwithstanding, I agree with Namdar the operative date here for evaluating the timeliness of the Amended Counter-Counterclaim should be July 14, 2025, not September 22, 2025. I am not persuaded the only reasonable interpretation of the three sentences in the comments box of the order granting Immutable's motion for a more definite statement is an explicit finding that the Original Counter-Counterclaim failed

to put Immutable on notice in the way that Rule 15(c) contemplates for relation-back purposes.[85]

Paragraphs 2 through 5 of the Original Counter-Counterclaim lay out the essential elements of a claim for breach of contract: (1) "Namdar and Immutable entered into an Employment Agreement dated August 2, 2021";[86] (2) "Immutable breached material terms of the [Employment] Agreement by, among other things, failing to pay Namdar's salary for the agreed-to period and failing to provide the agreed-to equity compensation";[87] and (3) "Namdar was injured by Immutable's conduct in an amount to be determined at trial."[88] *See Calumet Cap. P'rs LLC v. Victory Park Cap. Advisors, LLC*, 353 A.3d 88, 112 (Del. Ch. 2026) ("the elements of a claim for breach of contract are a contractual obligation, a breach of that obligation by the defendant, and a causally related injury warranting a remedy") (citing *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, 2020 WL 7024929, at *47 (Del. Ch. Nov. 30, 2020), *aff'd*, 268 A.3d 198 (Del. 2021)). And there is little difference between the Original Counter-Counterclaim and the Amended Counter-Counterclaim for purposes of giving fair notice of Namdar's breach of

---

[85] *See* Dkt. 51.

[86] Original Counter-Countercl. ¶ 2.

[87] *Id.* ¶ 4.

[88] *Id.* ¶ 5.

contract claim—most of the allegations added to the Amended Counter-Counterclaim after the court granted Immutable's Rule 12(e) motion are irrelevant to Namdar's claim that Immutable breached the Employment Agreement.[89]  In the words of this court in *Atlantis Plastics*, Immutable "had notice from the [O]riginal [Counter-Counterclaim] that [Namdar's] new claim might be asserted against [Immutable]."  558 A.2d at 1065.

For these reasons, I find the Amended Counter-Counterclaim relates back to the Original Counter-Counterclaim under Rule 15(c) and is not time-barred.[90]

### 2. The Filing of Immutable's Breach of Contract Counterclaim Did Not Toll the Limitations Period for the Amended Counter-Counterclaim

I reject Namdar's alternative argument that the filing of Immutable's breach of contract counterclaim tolled the limitations period for the Amended Counter-Counterclaim.[91]  The only authority cited by Namdar, the Fourth Circuit's 1982 opinion in *Burlington Industries v. Milliken & Co.*,[92] is not the

---

[89] *See* Am. Counter-Countercl. ¶¶ 3–10.

[90] This could be a Pyrrhic victory for Namdar.  Most of the compensation due Namdar under the Employment Agreement was due before July 14, 2022. *See* Empl. Agreement ¶¶ 1–3; *see also Vivint Solar, Inc. v. Lundberg*, 2024 WL 2755380, at *28 & n.192 (Del. Ch. May 30, 2024), *aff'd*, 340 A.3d 541 (Del. Mar. 19, 2025) (ORDER).

[91] Answering Br. 12.

[92] 690 F.2d 380, 389 (4th Cir. 1982).

law in Delaware: "Under Delaware law, where a counterclaim seeks affirmative relief rather than acting merely as a defense to a plaintiff's allegations, it does not relate back to the filing of the complaint, but must independently satisfy the statute of limitations." *Whitney v. Guys, Inc.*, 48 F. Supp. 3d 1236, 1258 (D. Minn. 2014) (citing *DiNorscia v. Tibbett*, 124 A.2d 715, 716 (Del. Super. 1956)), *aff'd*, 826 F.3d 1074 (8th Cir. 2016). *See also Delaware Chems., Inc. v. Reichold Chems., Inc.*, 121 A.2d 913, 917–18 (Del. Ch. 1956); *Adames v. Adames*, 2020 WL 3027240, at *1–2 (Del. Super. June 5, 2020); *Wilson v. Kirlin*, 2011 WL 1465576, at *1–2 (Del. Super. Apr. 15, 2011).

## III.   CONCLUSION

I recommend the court deny Immutable's Motion to Dismiss the Amended Verified "Counter-Counterclaim." This is a Report under Court of Chancery Rule 144(b)(1). Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a Final Report in this action.